No. 12,826.

THE LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY VS. BOARD OF ASSESSORS ET ALS.

SYLLABUS.

Taxes imposed on a non-resident, whose property is not in the State, are null, as tax laws can have no extra-territorial effect.

Debts due to a non-resident (still in non-concrete form) have their *situs* at the domicile of the creditor and not at the domicile of the debtor.

ON APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Saunders & Miller* and *E. W. Huntington* for Plaintiff and Appellee.

*F. C. Zacharie* for Tax Collector and Board of Assessors, Defendants and Appellants.

*J. J. McLoughlin,* Assistant City Attorney, for City of New Orleans, Defendant, Appellant.

Argued and submitted December 8, 1898.
Opinion handed down January 9, 1899.
Rehearing refused May 15, 1899.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff brought this suit to have the assessment of its "credits" cancelled, for the year 1897.

Plaintiff was assessed for money loaned on interest, all "credits" and

all bills receivable for money loaned or advanced, or for goods sold, and all "credits" of any description.

We understand that the issues now relate to the assessment of "debts" that were due for premiums, and that the other items of property assessed do not give rise to any question for our decision.

The plaintiff corporation has no domicile in this State.

But it has a resident board of directors, a resident secretary, and an assistant secretary; the latter is secretary of the board, but not of the company.

They are an advisory board to the home board.

The resident secretary, it appears, manages the business and renders his accounts, and makes remittances to plaintiff.

The company complied with the requirements of Act 245 of 1897, by opening an office in this State for the purposes stated in the article of the Code.

The position of plaintiff is, that credits due the company for uncollected premiums are only taxable at the domicile of the company.

This is controverted by the defendants, who urge, in substance, that the plaintiff's "credits" fall within the grasp of the revenue law adopted in 1890, taxing the property of non-residents.

The whole theory of taxation under the Constitution of 1879, which governs in this case, was based on the idea that the taxes were a property tax, and that the property assessed should be seized and sold to satisfy the taxes for which it was assessed.

The old method of recovering taxes by suit against the debtor was abolished, and in its place the Constitution ordained, that the property assessed should be seized and sold for the taxes.

No great difficulty should now arise in assessing and collecting the taxes on every item of property stated in the revenue act as subject to taxation.

Now, as to debts; a mere debt, a promise to pay, has no value within the limits of the State, if it be due to one not domiciled in the State.

Its value is at the domicile of the creditor, where it has its *situs*.

It is not property, save at the domicile of the creditor.

If assessed and sold for taxes, we are inclined to think that the title would be greatly wanting in essentials to a perfect legal title.

If treated and considered as a license tax for carrying on business,

collection may be effected, perhaps, but that would only prove that the proposition is correct, for a license tax is not a property tax.

The opinion from which we will quote in a moment, is broader in its scope than needful to sustain our view. The fact in that case is, an attempt was made to tax foreign creditors.

The court decided against it, and held that the debts owed by individuals are not property of the debtor in any sense; that they are promises, obligations, duty, and only possess value in the hands of the creditors where they are property, and in whose hands they may be taxed. "To call debts property of the debtors is a mis-user of terms."

"Debts have no *situs* separate from the domicile of the creditor. This principle might be supported by citations from numerous adjudications, but authorities could not add to the manifest truth." Justice Fields, organ of the court, 15 Wallace, 300.

This question of taxing "credits" was considered by Mr. Cooley. He, in language not ambiguous, gives it as his opinion, that debts owing to foreign creditors by individuals, are not taxable at the domicile of the debtor. Cooley on Taxation, page 15.

Upon the same subject we extract from the book of another commentator:

"A debt not evidenced by negotiable paper, according to our view may be taxed at the residence of the debtor; according to another view, at the residence of the creditor.

"The weight of authority sustains the latter view." Burroughs on Taxation, p. 41.

"The *situs* of the debt is the creditor's domicile." Wharton Conflict of Laws, Section 80.

"Debts have no other *situs* than the residence of their owners." Desty, p. 326.

The decisions of this court have repeatedly held, that "credits" have their *situs* at the domicile of the creditor, as will be seen by the following extracts:

"The tax collector affirms the validity of the tax on the ground, that the section of Act 98 of 1896, directs that movable property shall be assessed in the parish where it is located. This applies to tangible movables, but not to incorporated rights generally, which follow the person of the owner and are not susceptible of physical location."

"It is well settled, that the *situs* of a debt as property, is at the domicile of the creditor ; citing Murray vs. Charleston, 96 U. S. 432;

Railroad Company vs. Pennsylvania, 15 Wallace 300, and Cooley on Taxation."

Justice Fenner was the organ of the court in the case from which we have just quoted: Mayer & Co. vs. Sheriff, 41 An. 646. It is well to bear in mind that, under the revenue law of 1886-1890, "debt" was included as property subject to taxation.

This decision was rendered in June. In December of the same year, Justice Poche, as the organ of the court, said: "In the case of Meyer vs. Pleasant, 41 An. 645, hereinabove referred to, it was held in harmony with settled jurisprudence, that the *situs* of a debt is at the domicile of the creditor."

Also—"And on that subject, it is beyond question, the rights of a corporation, as well as of a neutral person, to have a legal domicile, and that domicile is in the State where it was incorporated."

"With the leave of other States, a corporation can extend its operations to other States—but it does not, thereby, acquire a new domicile in every State in which it does business."

"It retains the domicile of birth, and, like neutral persons, it is at that domicile that its obligations for, and its liability to taxation for debts or other incorporeal rights which it owns, must be tested and settled." Citing 104 U. S. —, and 32 Federal Reporter, 183.

Again, the court in that case in substance says: That the corporation was a foreign one and continued as a foreign corporation without any change in its *status* growing out of its compliance with Art. 235 of the Code.

The question came up again in 1892. Justice Fenner, whose opinion is entitled to great weight, particularly in view of the fact that he had considered the question in Meyer vs. Pleasant, cited *supra*, was the organ of the court, and said: "There is no doubt of the legislative power to modify the rule of comity *mobilia personam sequuntur* in many respects.

"Movables having an actual *situs* in the State, may be taxed there, though the owner be domiciled elsewhere.

"Even debts may assume such concrete form in the evidences thereof, that they may be assessed when such evidences are situated in the State, as in the case of bank notes, bills of exchange, or bond.

"But as to mere ordinary debts, reduced to no such concrete forms, they are not capable of acquiring any *situs* distinct from the domicile of the creditor, and no legislative power exists to change that *situs*, so

far as non-resident creditors are concerned. As said by the Supreme Court of the United States: 'To call debts property of the debtors is simply to misuse terms.' All the property there can be, in the nature of things, in debts, belongs to the creditors to whom they are payable, and follows their domicile wherever they may be. The debts can have no locality, separate from the parties to whom they are due." Railey vs. Board of Assessors, 44 An. 769.

In the case of Clason & Co. vs. City, 46 Ann., 1, this court said: "Under the principles enunciated in those cases, the fact that the plaintiff has a resident clerk acting for it in the city of New Orleans, and that it has an office and pays a license there, is unimportant. For the purpose of a determination of the issue involved herein, we have to deal with the plaintiffs as non-residents, and in so dealing with them, we are of the opinion that the judgment of the lower court is correct."

The court in this case held, substantially, that the credit owing to a foreign firm is not subject to taxation.

In State ex rel. Insurance Company vs. Board of Assessors, 47th Ann. 1545, the court held: "But it has never been decided that tangible personal property could not be assessed at the owner's domicile, notwithstanding its actual situs was abroad, in some other State or country."

A proposition not before us at this time. If it were it would meet with our entire approval. There is no question here of the situs of personal property which has a visible existence as stated in the case from which we have quoted.

This was not a case involving a "mere, ordinary debt," as subject to taxation. The other cases decided by this court, subsequent in date, made no question of the right to assess tangible movables.

The court said in one of the cases: "The defendants cite the case of Clason vs. City, 46 Ann., 1, to sustain their contention. The decision in the Liverpool & London & Globe Ins. Co. vs. Board of Assessors, 44th Ann., 760, is of more direct application. The decision gave full recognition to the exemption from taxation here of debts due the foreign corporations, but maintained the assessment on the cash of the company necessary here for its business purposes."

The principle of the decision in Bluefields Banana Co. vs. Board of Assessors, 49 Ann., 43, applies to this case.

We cannot hold that cash thus liable to taxation is exempted.

There is no question in the case before us for decision of cash, which is undeniably a tangible, movable subject of taxation.

The defense urges that the doctrine *mobilia sequuntur personam* is subject to so many exceptions, that it can be applied only in the simplest cases. A proposition to which we have not the least objection to offer. It is unquestionably true. None the less, it does not apply in the following case. Let us suppose that a person domiciled in England binds himself to insure an owner of property who has a domicile in this State, on condition that the owner pays him an amount fixed within a stipulated time; the promise of the assured to pay for this insurance would not be subject to taxation in this State.

For the same reason, the assured's promise to pay in the case now before us for decision, is not subject to taxation here.

The defence also urges, that the decisions (Meyer vs. Tax Collector, 41st Ann., 646, and Barber Asphalt Paving Co. vs. City, 41st Ann., 1015,) do not sustain subsequent decisions, because, under the tax acts of 1886 and 1888, there were no provisions in conflict with the doctrine *mobilia sequuntur personam.*

In a former law, *i. e.,* law of 1886, all "credits" were subject to taxation due by any "person, company, association, or corporation *in* and *out* of *this State,*" and all "credits" held, controlled or administered by "agents" and others in this State. Section one of the act, as in the Act of 1890.

The revenue law enacted in 1888 is substantially the same, and was not less broad than the Act of 1890.

In the law requiring "debts" owed by the foreigners to be assessed for taxation, as we take it, it was intended for all such debts as are evidenced by note or by mortgage, or that are in such other concrete form as to render it possible to subject them to taxation under the present laws.

No attempt has been made since the cited decisions were rendered to localize the "debts," "open accounts," such as those upon which the taxes are now claimed.

The State of Louisiana possesses jurisdiction for purposes of taxation under present laws over bonds owned by corporations actively engaged in business within the State, without regard to the owner's demands. also judgments; such bonds and judgments being in themselves property which may have a *situs* away from the owner's domicile.

As to "open accounts" with a foreign company, for such protection as it may offer, the law to date has not localized them so as to render it possible to assess them here and sell them for taxes.

While it may be that a domicile in the State as to those accounts may well be required as a condition precedent to a foreign company's business in the State, they can not, in our view, be assessed here as foreign "credits" under the wording of the present law.

We have reviewed the decisions of the Supreme Court of the United States, of date comparatively recent, which the defense contends show a change in the jurisprudence since the decision rendered in the 15 Wallace before cited.

We found in the first case reviewed that the company sought to be taxed was a corporation created by the commonwealth of Kentucky for the purpose of erecting a railroad bridge with its approaches over the Ohio river, between the city of Henderson, in Kentucky, and the Indiana shore.

The court held "that the tax controversy was nothing more than a tax on tangible property of the company in Kentucky, consisting of tax franchise."

The company was a Kentucky company, and under the revenue law of the State, tax is levied on the home company, i. e., "on all property of corporations *organized under the laws of the State*," whether such property be in or out of the State, including the intangible property of such corporations, which property, that is, the intangible property, whether situated in or out of the State, shall be considered and estimated in fixing the value of the corporate franchise, as we understand all property tangible or intangible of home companies.

This decision sustains our view.

The franchise and other intangible property, it holds, is subject to taxation at the domicile of the owner—where it is *situs*. Henderson Co. vs. Kentucky, 166 U. S., 150.

Another case of the same court, from which the defense quotes, was an Ohio case. It purports to provide for a tax upon *property within the State of Ohio,* and a mode of assessment to ascertain the value of the property in Ohio, and not to assess intangible property, having its *situs* in another State.

Adams Express Co. vs. Ohio, 165 U. S., 228.

We take it, that the Supreme Court of the United States in Home Silver Mining Co. vs. New York, 143 U. S., 315, was concerned with

the question of a franchise, and found under the law of New York that the company was bound for the tax upon its franchise property, which the courts have repeatedly held has a *situs* within the limits of the State by which it was granted.

We find no error in the judgment; it is affirmed.

NICHOLLS, C. J., absent.